Among the several errors that marred the trial and sentencing in this case, I want to focus on just two of the central ones, the Zybert error and the Taylor issue regarding the prior conviction. As regards to the Zybert error, I would like to take a moment first to acknowledge that there was a mistake, an error in the statement of facts in the opening brief, which my learned opponent has drew my attention to. That's on page 6 of the opening brief, indicating that Mr. Gomez was questioned about his place of birth and permission to remain in the United States after his arrest. That's incorrect. Those statements were made prior to his arrest. As the record indicates, and as Mr. Crowley has pointed out, the record indicates that there were two questions and two answers after the arrest. Whether he had not been deported previously and whether he had been arrested previously by Border Patrol. As regards to the Zybert error, this court in Williams identified a certain number of features that would indicate deliberate intent to use a two-step process in order to weaken the Miranda protections. In this case, there was evidence in all of those categories and then some. In addition, there was evidence which I would say goes to subjective intent by the evidence that Agent Hopkins gave a very implausible explanation for why he knew nothing about the previous statements that had been made prior to the second interrogation. He claimed that he was called in specifically to assist with the interrogation, that he looked into Mr. Gomez's criminal history and into his immigration history, and yet he never asked the arresting agent who was also participating in the second interrogation, had Mr. Gomez made any prior statements. It doesn't seem to be very good investigative technique to simply ignore the fact that perhaps other statements had been made prior to this. It was a very implausible explanation, and I think that might be indication that something much more was going on here. What do we do with the standard here? We have to find that the district court clearly erred in finding that the second interrogation did not exploit the first. I'd say that the standard review here is the one that was specified in Williams, that this is a de novo review, because it's reviewing exactly in Williams, it's the same situation, it's reviewing the adequacy and effectiveness of a Miranda. The factual issue is whether or not the second interrogation exploited the first interrogation. That is one of the factual foundations, one of the findings which the district court could look into. Why is that clearly erroneous? Well, it wasn't erroneous that Agent Hopkins did not make any reference to the prior statements, because he was denying that he even knew that the prior statements existed. So there's nothing erroneous about that. There really was nothing in the record to show that Agent Hopkins had made reference to the prior statements. But that's only one factor, and not even one that is mentioned in either Zybert or Williams, particularly as a factor showing deliberateness. But I agree, you could indicate that. That's just one factual element that could show deliberateness. The other factors, the ones that are mentioned in Zybert and Williams, there is some evidence on the record here for every one of those categories. The district court did hang its hat on that particular fact that Agent Hopkins did not refer to the statements during the course of the second interrogation. And also believe that there was a curative, sufficient curative measures in the fact that there was a Miranda warning, and that he indicated to Mr. Gomez that he was now being considered for criminal charges. But that was, for various other reasons, I would say that the curative measures were not sufficient in this case. Particularly because on top of it, there was a San Juan Cruz error here that obscured the effect of the subsequent Miranda warnings. Judge Moskowitz excluded all the statements pre-Miranda. That's correct. Precisely, he found that some of the statements that have been made were proper questions subject to a Terry stop. The stop was not pretextual even though Mr. Gomez argued that there was substantial evidence that it was. The finding was that that stop was okay, those statements were admitted. But that the subsequent statements after Mr. Gomez was handcuffed and put in the back of the border patrol car, that the statements, questions and statements there were in violation of Miranda. So, but there he had received his Miranda warnings when he was being questioned the second time. The second time, right on the heels of being given his administrative rights and then being told those rights don't apply. And the same confusing situation which this court found in San Juan Cruz debilitated the effect of the Miranda warnings. So even, there are signs of deliberateness in every one of the categories. But there's also substantial evidence that the curative effect was deficient here. The same factors, Williams points out the same factors as used for deliberateness go to the curative effect. But in addition, a factor which the plurality and Justice Kennedy and Zybert pointed out is particularly important. There was no explicit disclaimer to Mr. Gomez that his prior statements were no longer usable against him. There was an overlap, which Justice Kennedy also found was significant, because it tends to indicate that the prior statements were not independently incriminating. And we have the San Juan Cruz error as well. Showing that it is very likely that Mr. Gomez did not understand which rights did apply at that point. How about the enhancements? Thank you very much. I would like to move on to that. I think that's actually even a clearer situation here. The en banc decision of Fernandez-Ruiz has held that recklessness is not the sufficient mental state for a crime of violence. And under California law, under Overman, Penal Code 246 can be found on the basis of reckless conduct. This was not a question considered in Cortes Arias. They did not look at mental states at all in that case. Well, you know, we have to, I would want to put this nicely. You know, we have a clear three-judge panel opinion, or that too, actually, I guess, if I'm not mistaken. It says that 246 is a categorical, is categorically a crime of. Actually, three cases have discussed this since the time this appeal was fought. I mean, it was Cortes Arias before, Lopez Torres, which the government is relying on in particular. But we're a three-judge panel. We have to tread carefully on the, you know. I understand that, Your Honor. On the toes of those other three-judge panels. I understand, and rightfully so. But a couple of factors should be considered here. Number one, this argument about mental state. In fact, none of the arguments raised in Mr. Gomez's opening brief were ever considered either in Cortes Arias or in Lopez Torres. None of the arguments about over-breath were considered there. So this raises a substantially different legal question than was presented in either of those cases. There has also been subsequent decision, by en banc decision, saying that recklessness is an important factor in determining. Now, the government comes back in its 28-J letters and whatnot and says that, well, here we're dealing with the guideline regulation. And in the other cases dealt with the statutory provision, section 16, yes. Well, in fact, there is no case Is there any weight to that argument? Is there any force to that argument? I don't believe so, Your Honor, because the government did not cite any case specifically that said that the reasoning in LAICAL did not apply equally to the guidelines and to the statutes. The only cases they cited were cases where there is a difference between the guideline and the statute in that the guideline includes specifically enumerated offenses which are not in the statute. That's what the question is. Ginsburg. Well, when Fernandez reads, I don't have the opinion in front of me because I was overly familiar with it at one point, but when it overruled contradictory precedent, did it limit it to section 16 precedent or the guidelines or anything? I didn't just, I think there was a, because there had, we had three judge panel decisions that went directly contrary to Fernandez-Ruiz. And so there's some, maybe you have it and you can look at it. I do have the case, but. Because you want to save one minute. Why don't you just find what it said about overruling prior precedent. Okay. I would also like to draw the court's, these are cases that I've discovered very recently, so I just want to point out there is no Ninth Circuit case specifically talking about this. But the Tenth Circuit case, Perez-Vargas, that's at 414 Fed 3rd, 1282, points out that the language of the guidelines and the statutes is identical and that in the relevant parts. We, we look, I mean, we don't have a case that says you read these two provisions together, but it seems to make sense. Yes. I would also point, even more on point is Portela in the Sixth Circuit, and I only have a Westlaw site, and it is 2006 Westlaw 3359230. There, if I could just read the passage specifically, the Sixth Circuit said, because the catch-all phrase of Guidelines 2L1.2B1 uses identical language, Portela's conviction for reckless vehicular assault is not a crime of violence. Identical to Section 16, that is. So they're talking that LAICAL fully applies, and they did apply it, precisely because the language, the words use, attempted use, and threatened use are identical. And that's what's, that's what's important for LAICAL, is what is the meaning of use for a crime of violence? That language is identical. There are differences between the Guideline 2B1.2, 2L1.2, and crime of violence in, in the statutes in Section 16. There are differences between those definitions of crime of violence. But for the purposes, the relevant, the pertinent question of what constitutes use, LAICAL is still very much on point, even though, because the language is exactly the same, there's no, there's no reason to believe that Congress would intend that, in certain cases, recklessness would be, would qualify as a crime of violence. But in these other contexts, recklessness could be a crime of violence. Well, you've just done your rebuttal, and you're going over time. That was your rebuttal to what, I mean, that was your setup. So, thank you for taking over your time. Thank you. May it please the court. Good morning. Michael Crowley on behalf of the United States. I will respond first to the Lopez-Torres matter. I'd point out, as we cited in our 28-J letter, United States versus Diaz-Argüeta, 447 Fed 3rd 1167. In that case, the court specifically said that LAICAL does not touch upon 2L1.2. We'd also note that in the United States, Valencia, excuse me, Valencia versus Gonzalez, the court noted that the definitions are different. And actually, if you look at 2L1.2, which has. Well, you know, but the language is very similar. Why would you not, why would you read it differently? Well, if you look at the enumeration. The clause that we're dealing, you know, the provision that we're dealing with. You're, you're right. I mean, I have 2L1, the commentary here. And you're right, it's, it's, it's broader. Means anything from murder, manslaughter, blah, blah, blah. Then it goes down to the very end. And it says, or any offense under federal, state, or local law that has as an element. The use, attempted use, or threatened use of physical force against the person or other. If you look over at 18 USC section 16, an offense that has an element. The use, attempted use, or threatened use of physical force against the person or property of another. They used similar language in that. It's the exact language. Oh yes. We would not dispute that point. But if you look at the crimes, which the sentencing guidelines include, are crimes which don't require recklessness. As we noted in our documents, statutory rape does not require recklessness. In fact, it requires no scientific. What's really interesting to me, because at first, when we first started doing this, I, I couldn't believe that we were doing this. But we, Taylor started with, with criminal laws. Applicate, interpreting criminal laws. Just regular state criminal laws. And we did a categorical approach. Modified categorical approach. And then we imported that into the immigration context. Which is the context in which Fernandez-Ruiz arises. And so, what I'm wondering is, since it's the whole, all the doctrine and theory is developed in the criminal law. And in the area of the statutory guidelines. Why wouldn't we import back the interpretation that's, you know, sort of simultaneously developing in the area of the immigration law? Well, I, I think the issue with that is, well, as the court found in Diaz-Argueta, that they're not trying to accomplish the same goals. If you look at what 2L1.2 includes as crimes, as I noted, statutory rape, no scientific requirement. Actually, manslaughter in the nights, under federal law, is a crime of recklessness. So, there are enumerated crimes that the sentencing guidelines say, we view these as. Let me ask you, does the Crime Edition 246 of the California Penal Code, does that qualify under any of these enumerated specific crimes? No. So, they're trying to bring it in under the sort of catch-all phrase. Correct. And we, we're not claiming it's one of the enumerated. But to basically take from the immigration context, a, a concept which a prior panelist said. But it started in the criminal context. That's why, I mean, when, when they adopted it in the immigration context, that's when I thought the argument was better, that they shouldn't be importing, you know, these concepts from criminal law into the immigration context, because the goals were different, the exact argument you're making. But it's already there in the criminal context. And so, now the law's simultaneously developing in both contexts. I didn't agree with Fernandez-Ruiz, okay? But it's there, it's on the books. Well, I, I, I think it, it does go to the goals. In looking at immigration, they're, they're basically saying that when you look at Fernandez-Ruiz in the immigration cases, they're saying if we're going to deport a person, that person should be doing something with at least a certain level of scienter. But on the punishment side, when you're looking at 2L1.2 and the sentencing guidelines, there's a completely different theory behind that, that this person has done something which the Sentencing Guidelines Commission views as being a highly dangerous crime for the plus 16 enhancement. And that's why importing, basically to import the recklessness standard into the guidelines is contrary to the enumerated, some of the enumerated crimes. So clearly, the Sentencing Commission is saying at least some of these crimes, well, actually I'm not even going to say even some. The Sentencing Guidelines Commission, by enumerating crimes, is saying recklessness can be sufficient. Well, if they would say, if this had said, attempted use or threatened use of physical force against the person of another with or without intent, or, you know, or with intent or reckless conduct, then you're home free. But it doesn't say that. I think this might have to be something the Supreme Court decides, because it's kind of the, you know, the. And that's why I believe. The water's under the bridge on this one. Right. I mean, that's why I cite the Diaz-Argueta, because that's actually a decision of this court where this court recognized that we're not going to apply. And basically, in Diaz-Argueta, what they were looking at was the term aggravated felony for immigration purposes, which is the same theory in Leocal and Fernandez-Ruiz. What is an aggravated felony? It includes, definitionally, 18 U.S.C. 16. And in Diaz-Argueta, the court said, that is not, that Leocal and that analysis does not touch upon the sentencing guidelines. So one panel of this court has already looked at this and come out our way. Yes. Ruiz is just October 06. Correct. What are you relying on? Prior? Yes. And then bank court controls. Yeah. But I think Ruiz is going to, it never discusses that we're going to apply this in the sentencing. Aspects. So I don't believe you can say that Ruiz overrules Diaz-Argueta. No, but it gives, you know, it gives meaning to these words, attempted use or threatened use of physical force against the person of another. You look at. I'd also note one last issue on that. Sure. So little time. When we submit our 28-J letter, if you look at the basis of Leocal, which is clearly what the defense is trying to import in this case. In Leocal, the court said in one of its initial paragraphs, we do not hereby deal with threatened use of violence. If you look at the analysis in Cortez Arias and Lopez Torres, that's exactly what the analysis is predicated on. Threatened violence. So Leocal and actually the Supreme Court put it in italics. We do not here deal with attempts or threats. The both rulings, Cortez Arias and Lopez Torres, actually are based on the threatened use of violence. And they look at what the threatened use would be. So to take Leocal, where the Supreme Court clearly said at the beginning of its decision, we're not looking at that aspect of this I'd note, as counsel properly noted, Martinez-Martinez, a recent decision within the last 30 days, in that case, another panel looked at What state's Martinez-Arias out of? Arizona. They looked at Are they the same as California? No. In fact, what their analysis, their analysis in that basically was, and I can actually give you the quote, they looked to the California statute as a template on how they should review the Arizona statute as a crime of violence. And actually in it, they stated, posed another way, what is it about the California statute at issue in Cortez Arias that convinced this court that a conviction for violating that statute amounted to a crime of violence? So in Martinez-Martinez, the court basically said, 246 is categorically a crime of violence. They use that as a template and then compare it to the Arizona statute, again, confirming the prior panel decisions that 246 is categorically a crime of violence. In response to the Miranda issue under Siebert, we'd note that, as noted by the court, factual findings should be analyzed on the Miranda standard. In this case, the district court looked at the issues and basically found no deliberate two-step analysis. And we'd note that basically Judge Moskowitz stated there is nothing here where the officers try to get statements from him, meaning Mr. Gomez, without Miranda warnings, and then somehow use it to obtain statements with Miranda warnings. I believe that should be given deference as a factual finding. And with no deliberateness, there is no Siebert violation. And again, we'd point out this case involved two questions, one of which was never ever asked again in the subsequent questioning, whether the person was deported, had been deported, whether he'd ever been arrested. Those were never asked again. There is a four-hour delay. He's read his Miranda. I understand that San Juan Cruz is raised. That was never raised at the lower court. But Judge Moskowitz was very clear on the record that he stated that Agent Hopkins – I'm actually running out of time. May I finish mine? You may finish, Your Honor. Agent Hopkins made the Miranda warnings very clear to Mr. Gomez. So I don't believe that San Juan Cruz would be in effect at this point because it was clarified that it was a criminal case and that Miranda was in play. Thank you. Thank you, counsel. Counsel, did you find – I'm not – you don't have time for rebuttal because you used your rebuttal time, but did you find a place in Bernante's case where it speaks to what's being overruled? Your Honor, I found two cases that it talked about that would be overruled by its decision. Cerrone-Sanchez, which was a Section 16 case. The other one is Hermoso-Garcia, and I couldn't tell from that. I'm not unaware whether that was Section 16 or Guidelines case.  But thank you, counsel. And the case of United States v. Narvaez-Gomez is submitted, and we have previously submitted Dallara v. Reynolds, and therefore, this session of the court is adjourned for today. All rise. This court is adjourned.    Thank you. Thank you. Thank you. Thank you.
judges: Beezer, Wardlaw, Paez.